**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**LATARA KEMP, a minor, by and through
VERA KEMP, et al.**                                                       **PLAINTIFFS**

**v.**                                          **CIVIL ACTION NO.: 4:07CV41-SA-DAS**

**WILLIE J. PERKINS, SR., et al.**                                                       **DEFENDANTS**

## MEMORANDUM OPINION

Presently before the Court is Defendant Leflore County, Solomon Osborne, and James Littleton's Motion for Summary Judgment (the "County Defendants") [117]. Also, Defendants Carla Williams and Kiara Williams ("Williams Defendants") have filed a Motion for Summary Judgment [123]. Willie J. Perkins, Sr., Sheriel Perkins, Willie J. Perkins, Jr., Takiyah Perkins, and Jamal Perkins ("Perkins Defendants") have also filed a Motion for Summary Judgment [114]. The Court notes the following outstanding motions: Defendant Perkins' Renewed Motion for Sanctions [118], the Williams Defendants Motion for Sanctions [121], and Plaintiffs' Motion for Separate Trial of Claims [113].

Having considered the Motions and Responses, the Court finds that the County Defendants' Motion for Summary Judgment is well taken and should be granted. As such, the only claims pending in this lawsuit are state law claims. The Court declines to exercise jurisdiction over these claims. Accordingly, all other pending motions in this case are terminated and this case is dismissed.

*Factual and Procedural Posture*

On May 5, 2005, Latara Kemp drove from Greenwood High School to Palace Street near 806 South Boulevard, the address of Willie and Sheriel Perkins. Kemp alleges that upon nearing the home of the Perkinses in Greenwood, Mississippi, Willie Perkins, Jr., and his younger brother, Jamal

Perkins, approached her car with raised baseball bats, yelling and screaming at her. Latara asserts she sped away upon being threatened by the Perkins' boys.

Soon thereafter, Kiara Williams and her mother Carla Williams filed an affidavit against Latara Kemp at the Greenwood Police Department alleging that Latara assaulted Kiara with a gun and threatened to "blow Kiara's head off." Several members of the Perkins' family are listed as witnesses on the Greenwood Police Department offense report. Upon notification by a police officer of the affidavit and underlying facts, Leflore County Youth Court Judge Solomon Osborne gave a verbal order to the Greenwood Police Department to arrest Latara Kemp. Officer Webster Nuel arrested Latara Kemp and booked and detained her at the Leflore County Juvenile Detention Center on May 5, 2005.

Alondus Anderson, Latara Kemp's sister, attempted to file and sign an affidavit and offense report against Kiara Williams based on information and allegations Latara Kemp had told Anderson. Officer Keith Armstrong began the necessary paperwork as Anderson requested. However, Sergeant Raymond Moore of the Greenwood Police Department directed Armstrong to discard the offense report as Anderson did not have authority to file charges for someone else and without first hand knowledge of the event.

On Sunday, May 7, 2006, Judge Osborne received a call from Levi Boone, attorney for Latara Kemp's mother, who requested the release of Latara Kemp. Judge Osborne consented to Latara Kemp's release to the custody of her mother pending the initial hearing in the Leflore County Youth Court. Latara Kemp was released to her mother on Sunday, May 7, 2006. The next Monday, Levi Boone advised Judge Osborne that Johnnie Walls would be representing the Kemps in the initial hearing on Tuesday. On the day of the hearing, Judge Osborne was informed that the Kemps would

be represented by attorney Lee Abraham. After conducting Latara Kemp's detention hearing, Judge Osborne ordered her back into the custody of the Leflore County Detention Center based on the affidavit of Kiara Williams, the police reports, and a finding that the situation surrounding Latara Kemp's original arrest and detention constituted an emergency and a danger to Kiara Williams. After the hearing, Judge Osborne recused himself from the Kemp matter and appointed James Littleton as Special Judge. Judge Osborne's recusal was advanced by Lee Abraham's appearance because Abraham was opposing counsel in a case filed against the judge in his personal capacity. Special Judge James Littleton conducted a detention hearing for Latara Kemp on Wednesday, May 10, 2006, and determined that Latara Kemp should remain in custody until her delinquency hearing was held.

Kemp's attorney then filed a Writ of Prohibition with the Mississippi Supreme Court challenging Judge Osborne's statutory authority to appoint Littleton as a Special Youth Court Judge. On May 26, 2006, a panel of the Mississippi Supreme Court entered its Order finding that Judge Osborne's authority to appoint a special judge was limited to occasions of illness or absence from the county and did not extend to judicial recusals. Accordingly, the Order entered by Special Judge Littleton for the continued detention of Latara Kemp was vacated, and Latara Kemp was ordered released. In total, Latara Kemp spent twenty days in the juvenile detention center.

The Kemps originally filed this action in the Circuit Court of Leflore County and have since amended their complaint in the federal court. Prior to the expiration of the dispositive motions deadline, the County Defendants, the Williams Defendants, and the Perkins Defendants filed motions for summary judgment. The Kemps had also filed a Motion for Separate Trials, and the Perkins Defendants and the Williams Defendants renewed their motions for sanctions.

3

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548; Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*Discussion and Analysis*

The County Defendants filed a Motion to Dismiss on September 18, 2007, on accord of their absolute judicial immunity. As the same Defendants have now filed a Motion for Summary Judgment on the exact same grounds, the Court deems the Motion to Dismiss moot and will examine all the submissions in support and in response to those two motions to determine whether Plaintiffs

have alleged a genuine issue of material fact as to these Defendants. The County Defendants contend they are entitled to absolute judicial immunity for their alleged roles in confining Latara Kemp.

The United States Supreme Court has recognized that "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 13 Wall. 335, 347, 80 U.S. 335, 20 L. Ed. 646 (1872). Moreover, a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of jurisdiction." Id. at 351. Indeed, judicial immunity is overcome in only two sets of circumstances: first, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity; and second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Mirales v. Waco, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) (citing Forrester v. White, 484 U.S. 219, 227-29, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988); Stump v. Sparkman, 435 U.S. 349, 360, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); Bradley, 13 Wall. at 351, 80 U.S. 335)).

Whether an act by a judge is a judicial one "relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362, 98 S. Ct. 1099. In relation to the second instance of judicial non-immunity, the Supreme Court in Bradley noted the distinction between excess of jurisdiction and the clear absence of all jurisdiction over the subject matter:

5

> Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

13 Wall. at 351-52, 80 U.S. 335.

Judge Solomon Osborne, at all times relevant, was a youth court judge in Leflore County, Mississippi. Mississippi Code Section 43-21-151 provides that the "youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child." Moreover, "[n]o court other than the youth court shall issue an arrest warrant or custody order for a child in a matter in which the youth court has exclusive original jurisdiction." Miss. Code Ann. § 43-21-301. Indeed, "unless the judge or his designee has issued a custody order to take the child into custody," "no child in a matter in which the youth court has exclusive original jurisdiction shall be taken into custody." Id.

Plaintiffs challenge the following actions of Judge Solomon Osborne as being performed without judicial immunity: Judge Osborne's decision to detain Latara Kemp after he recused himself from the matter and Judge Osborne's attempted blanket appointment of James Littleton to serve as a "special judge." Detention matters of juveniles are handled by youth court judges, Mississippi Code Section 43-21-301, and special appointments are statutorily authorized under Mississippi Code Section 43-21-113. Therefore, all Judge Solomon Osborne's actions complained of by the Plaintiff were taken in his judicial capacity.

As to the second exception to immunity, Judge Osborne did not act in the "clear absence of all jurisdiction." Bradley, 13 Wall. at 351, 80 U.S. 335. As noted by the United States Supreme

6

Court, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Stump, 435 U.S. at 357, 98 S. Ct. 1099. Judge Osborne orally detained Latara Kemp before he recused himself in this matter; however, the written order was not issued until after the recusal. Even if this action was taken in excess of his authority, that does not itself deprive a judge of his immunity. See Bradley, 13 Wall. at 351, 80 U.S. 335. Moreover, Judge Osborne's attempted appointment of James Littleton as a special judge was likewise in excess of his authority but not a clear absence of all jurisdiction. Accordingly, Judge Solomon Osborne is fully protected by absolute judicial immunity and is hereby dismissed from this suit.

James Littleton's actions were also of a judicial nature. Littleton held a hearing and detained Latara Kemp after Judge Osborne issued the recusal order. As noted above, these are judicial functions such that Littleton is not deprived of judicial immunity under the first exception. The issue, Plaintiffs contend, is whether Littleton can be afforded judicial immunity where his appointment as special judge was improper according to the Mississippi Supreme Court. The Mississippi Supreme Court ruled that "pursuant to Miss. Code Ann. § 43-21-113, . . . Judge Osborne was without authority to appoint James K. Littleton as special judge in this matter. Accordingly, the panel finds that all actions, rulings, and orders entered by Special Judge James K. Littleton in this matter should be vacated."

The second prong of the Mireles test states that a judge will lose his immunity if his judicial act occurred in the complete absence of all jurisdiction. The Fifth Circuit has held that this prong concerns subject matter jurisdiction. See Brewer v. Blackwell, 692 F.2d 387 (5th Cir. 1982). Thus, "where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes." Malina v. Gonzales, 994 F.2d 1121, 1125 (5th Cir. 1993) (citing Adams v. McIlhany, 764

7

F.2d 294, 298 (5th Cir. 1985), cert. denied, 474 U.S. 1101, 106 S. Ct. 883, 88 L. Ed. 2d 918 (1986)). The Fifth Circuit has held that even where a state appellate court has overturned a judicial decision on the basis of no subject matter jurisdiction, the judicial officer could not be denied absolute immunity for those actions. Harry v. Lauderdale County, 212 Fed. Appx. 344, 347 (5th Cir. 2007) ("the Mississippi Court of Appeals' decision that Judge Springer acted without subject matter jurisdiction is not coterminous with the conclusion that she acted in 'complete absence of all subject matter jurisdiction.' If this were the case, each and every time a judge decided an issue where an appellate court later found subject matter jurisdiction lacking, that judge would have no judicial immunity").

A review of the federal caselaw concerning judicial immunity reveals that courts often extend judicial immunity even where judicial actions are taken outside the judge's jurisdiction. See Stump, 435 U.S. at 357 n. 7, 98 S. Ct. 1099 (noting that a "clear absence of all jurisdiction" is most apparent when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction, such as when a probate court conducts a criminal trial); Cockrell v. Memphis-Shelby County Airport Authority, 2:95cv16, 1996 U.S. Dist. LEXIS 21375, 1996 WL 671400 (N.D. Miss. Jan. 11, 1996) (granting Special Judge of Eminent Domain judicial immunity even though he presided over a case involving a minor which would have been better suited for chancery court); Hupp v. Hill, 576 N.E. 2d 1320 (Ind. App. 1991) (holding that a judge *pro tempore* qualifies for judicial immunity even where his actions were taken after expiration of his appointment). Indeed, the Eighth Circuit has noted that "a judge acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction but is not authorized because of certain circumstances." Duty v. City of Springdale, 42 F.3d 460, 462 (8th Cir. 1994). Finally, the Tenth Circuit has declared that "[t]he question of

8

judicial immunity does not turn on the judge's authority to perform the specific act being challenged, but on the scope of the judge's jurisdiction in a broad sense." Cornforth v. Howard, 98 F.3d 1349 (10th Cir. 1996). Moreover, when faced with the question of whether a judicial appointee performing duties pursuant to the Youth Court Act were entitled to this defense, the Mississippi Attorney General advised that "it is the opinion of this office that a "designee" acting within the auspices of the Youth Court act will enjoy judicial immunity." 2000 MISS ATT'Y GEN. OP. 0595.

Here, the court finds persuasive the fact that Judge Osborne, in good faith, recused himself from a matter in which he was not required to recuse. See Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 828, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986) (holding that judicial disqualification for bias is constitutionally required "only in the most extreme of cases."). He appointed a successor to undertake the judicial functions of this case. Littleton accepted the appointment and carried out those judicial functions as a special judge in the Kemp matter. There is no allegation between the parties that Special Judge Littleton knew he was without authority to adjudicate the Kemp matter. Therefore, Littleton had the subject matter jurisdiction to hear and adjudicate the Kemp matter at the time of his appointment by Judge Osborne. Accordingly and in light of the caselaw cited above, this Court holds that James Littleton did not act in the clear absence of all jurisdiction and is entitled to judicial immunity for all judicial actions taken in the Kemp matter.

The Fifth Circuit has acknowledged that the determination of whether a citizen has attained the status of a judge so as to extend judicial immunity is a "novel twist on the familiar problems of judicial immunity." Boyd v. Carroll, 624 F.2d 730, 731 (5th Cir. 1980). In Boyd, the mayor filed suit in Municipal Court, of which he was the usual judge, and appointed a special judge on his behalf to preside over that case. The special judge never took an oath or complied with other procedural

9

aspects of his being recognized as a judge. After being found liable at trial by the jury, the special judge filed a post-trial motion asserting he was entitled to judicial immunity. However, in that case the Court noted, "[t]he pleadings and record before us on this appeal do not present the apparently undecided issue of what constitutes de facto judicial status sufficient to afford judicial immunity." Id. at 732. Unlike the case *sub judice*, the defendant in that case failed to affirmatively plead judicial immunity or raise that defense prior to the end of trial.

Accordingly, this Court acknowledges that it is without a clear precedent on this issue; however, on the basis of prior caselaw and understanding the purpose of judicial immunity, this Court hereby grants to James Littleton, in his capacity as Special Judge of the Leflore County Youth Court, judicial immunity.

Because this Court has granted judicial immunity to the County Defendants, no federal causes of action remain in this case. The state law claims remaining in this case are purely state law claims and concern only defendants of those state law claims. "[W]hen all federal claims are dismissed, the district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claim." Hubbard v. Blue Cross & Blue Shield Ass'n, 42 F.3d 942, 947 (5th Cir. 1995). Thus, in the interest of economy, fairness, convenience, and comity, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims as all claims over which this Court had original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(4) Giles v. Nylcare Health Plans, Inc., 172 F.3d 332, 339 (5th Cir. 1999) (holding that a district court may, in its discretion, remand supplemental state law claims when it has dismissed the claims that provide the basis for original jurisdiction).

*Conclusion*

Judge Solomon Osborne and Special Judge James Littleton are both cloaked in judicial immunity as their conduct was judicial in nature and not in the clear absence of all jurisdiction. Accordingly, all federal claims asserted by the Plaintiffs are dismissed by virtue of this judicial immunity. The Court also declines to exercise supplemental jurisdiction over the state law claims put forth by the Plaintiffs, and therefore, those claims are remanded. The Plaintiffs' statutes of limitations are thus tolled for thirty days after entry of this judgment in accordance with 28 U.S.C. § 1367(d).

SO ORDERED, this the 15th day of September, 2008.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**